D. L. FAIR LUMBER CO. *et al. v.* FEDERAL LAND BANK OF NEW ORLEANS.

(Division B. May 19, 1930. Suggestion of Error sustained in part, June 9, 1930.)

[128 So. 732. No. 28704.]

E. M. Livingston, of Louisville, and **Bozeman & Cameron,** of Meridian, for appellant.

R. W. Boydstun, of Louisville, for appellees.

Ethridge, P. J., delivered the opinion of the court.

The Federal Land Bank of New Orleans, Louisiana, filed a bill in chancery court of Winston county against the D. L. Fair Lumber Company, a partnership engaged in the business of manufacturing lumber, operating saw

and planing mills, and purchasing and manufacturing rough lumber, etc., alleging that on or about the first of June, 1921, W. W. White and wife of Winston county were the owners of certain lands described in the bill, the same being valuable timber and agricultural lands, and the said White and wife, being indebted to the bank in the sum of four hundred dollars on said land, executed a mortgage on the lands and timber thereon to secure the said indebtedness, and that the said indebtedness was payable in thirty-five equal installments, and that said deed of trust was duly recorded in the records of Winston county. It was further alleged that on the first day of June, 1927, the mortgagor defaulted in the payment of the notes to the bank, and that the said bank advertised the said lands conveyed to it for sale and sold the same according to law, and that they were purchased by the said Land Bank at one hundred fifty dollars. It further alleged that the timber had been cut from the lands and sold to the D. L. Fair Lumber Company, and that by reason of the cutting of the said timber and removing it from the land the bank was damaged in the sum of two hundred ninety-three dollars and eighty-three cents.

It was further alleged that the bank was entitled to a reasonable attorney's fee for the bringing of the suit, and that one hundred dollars was a reasonable fee. It was further alleged that in March, 1924, or within a short time prior or subsequent thereto and less than six years before the filing of the suit, there was standing on the lands great amounts of valuable timber, the amount and value of which was unknown to the plaintiff and peculiarly was in the knowledge of the defendant, and that W. W. White and all parties primarily liable on the note were insolvent, and that the only remedy the complainant had to recover its loss was by relief in equity. It was further alleged that one J. B. White, not a party to the suit, nor to the original contract in any way, cut and sawed into lumber a great amount of timber on the

White lands and that D. L. Fair Lumber Company, acting through its manager and, agents, appropriated the lumber manufactured by J. B. White and used it, and that the complainant had no knowledge, either actual or constructive, of the removal of the timber until long afterwards, and that it gave no permission or consent to such removal and conversion; and the bill prayed for the recovery for the amount of lumber so received by the D. L. Fair Lumber Company and for judgment against it for the value of same to the extent of the damages and attorney's fee above set out.

The D. L. Fair Lumber Company filed an answer in which it denied receiving or having any knowledge of receiving any lumber grown upon the said lands, and substantially denied the allegations of the bill except to admit the allegations as to the deed of trust to the bank and to the ownership of White of the lands.

It appears from the record that W. W. White, the grantor in the deed of trust to the bank, permitted his son J. B. White to cut and remove the timber from the lands and manufacture it into lumber and sell the lumber, with the understanding that J. B. White would settle the indebtedness of W. W. White to the Land Bank. This, however, was merely an understanding between them. J. B. White had been dead about a year before the filing of the bill and his estate, if any, was not made party to this suit. It appeared that J. B. White erected a sawmill upon lands owned by another near the land of his father, upon which the suit is predicated, and from which the timber was cut. J. B. White had purchased two hundred twenty acres of timber from the party on whose land the mill was erected, and also bought timber from other parties. He sold lumber to the D. L. Fair Lumber Company in Louisville and to another lumber company at Sturgis, Mississippi. There was no showing in the evidence as to how much of the lumber taken from the two tracts of land were sold to the Fair Lumber Com-

pany, nor how much to the lumber company at Sturgis, Mississippi. It is not shown with any kind of certainty that the D. L. Fair Lumber Company bought any particular amount of lumber from J. B. White, nor to what extent the lumber that White did sell to D. L. Fair Lumber Company was cut from the land in question. The evidence is very unsatisfactory upon this point. There is no definite amount which came off of the lands in question establishing which went to the D. L. Fair Lumber Company. There is some testimony that some of the lumber manufactured by J. B. White from the land in question was placed upon the yards of the D. L. Fair Lumber Company, that J. B. White cut timber from the lands in question which was somewhat less than one hundred sixty acres, the acreage not being established by the evidence, but the value of timber being estimated at four hundred dollars by W. W. White and others. There were two hundred twenty acres on other lands from which timber was cut and manufactured into lumber by J. B. White, and also timber purchased from other timber owners by him and sold to these lumber buyers.

The complainant must establish his case with reasonable certainty. If all the lumber manufactured by J. B. White had been sold to the D. L. Fair Lumber Company there might be sufficient evidence of its value to sustain the judgment, but we do not know from the record, and cannot know from the record how much timber was taken from the W. W. White lands by J. B. White and placed upon the yards or sold to the D. L. Fair Lumber Company. We are unable to say that a majority of the timber manufactured into lumber and sold as lumber was not sold to the other lumber company or to third parties. In our view, the evidence is wholly insufficient to justify a finding against the D. L. Fair Lumber Company, regardless of the question as to whether the D. L. Fair Lumber Company in buying lumber would be charged with knowledge of where the timber was procured from which

the lumber was made. We are not now called upon to decide whether the buying without knowledge or notice is sufficient to put them on inquiry as to said matters. The evidence is insufficient to establish a case, assuming that the doctrine of cum onere applies.

We also think it was error to allow attorney's fee in this case. This was not a suit upon the notes or to enforce the contract between W. W. White and the bank, but it was a suit for conversion of property upon which the bank had a lien and, not an action upon the notes or contract in which the payment of attorney's fee was undertaken by W. W. White. The judgment will be reversed, and the cause dismissed.

Reversed and dismissed.

On Suggestion of Error.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

Upon a careful further review of this record, we have come to the conclusion that sufficient appears in it to indicate that on another trial the evidence may be made to comply with the general rule set forth in our former opinion, and that we should follow the ordinary course of reversing and remanding instead of reversing and dismissing. Therefore, the suggestion will be sustained to that extent, and the decree here will be amended so as to reverse and remand for a new trial.

So ordered.